IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VANCE SIMS, | ) | CASE NO. 1:11 CV 2789 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Vance Sims, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Sims had severe impairments consisting of degenerative joint disease (status post right knee replacement on June 29, 2009), degenerative disc disease of the lumbar spine, and a depressive disorder.[1] The ALJ made the following finding regarding Sims's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she can only perform

---

[1] Transcript ("Tr.") at 12.

simple, routine, repetitive tasks, requiring no more than superficial interaction with the public or coworkers.[2]

The ALJ decided that this residual functional capacity precluded Sims from performing her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed nationally that Sims could perform.[4] The ALJ, therefore, found Sims not under a disability.[5]

Sims asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Sims has identified three purported errors that she argues require reversal.

- The ALJ erred in deciding that Sims's orthopedic and psychiatric impairments do not meet or equal the disability criteria of the listings.

- Substantial evidence does not support a physical residual functional capacity for sedentary work given Sims's restrictions in sitting and lifting, her pain, and her use of a cane.

- The vocational expert's testimony does not constitute substantial evidence that Sims is not disabled at step five of the sequential process.

Further, Sims seeks a remand for consideration of new and material evidence.

---

[2] *Id.* at 14.

[3] *Id.* at 18.

[4] *Id.* at 19.

[5] *Id.*

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed. Additionally, the new evidence presented does not warrant a remand.

## Analysis

This case involves a challenge to the Commissioner's findings at steps three, four, and five of the sequential evaluation process. Sims also argues that the case should be remanded for consideration of new and material evidence.

Sims's relevant impairments are degenerative joint disease of the right knee, which resulted in a right knee replacement on June 29, 2009, and a depressive disorder. After the Commissioner's final decision in this case, Sims received a favorable decision on a subsequent application in 2012. That later decision rests on a finding that her physical impairment equaled a listing. As part of that finding, the agency determined that she had an inability to ambulate effectively.[6]

In this case, at step three, Sims argues that the ALJ should have found that she met or equaled the listing in 1.02A relating to a major peripheral weight-bearing joint and resulting in an ability to ambulate effectively. The ALJ's discussion of this listing in his opinion is very abbreviated in the step three section, and he references limited parts of the record.[7] Nevertheless, listing 1.02A requires the inability to ambulate effectively as defined

---

[6] ECF # 20-4 at 6.

[7] Transcript ("Tr.") at 13.

in 1.00B2b. This latter section, 1.00B2b, stipulates that ineffective ambulation involves an inability to ambulate without the use of hand-held assistive device(s) that limits function of *both* upper extremities. Although Sims did use a walker for a short time after her surgery, the assistive device she claims to use and need is a cane,[8] which would limit the function of only one upper extremity. As the ALJ discussed as part of his step four analysis, the evidence is in conflict regarding her ongoing need for a cane.[9] The step three finding, therefore, has the support of substantial evidence.

At step four, Sims challenges the finding that she has the ability for sedentary work. She bases this challenge on a residual functional capacity evaluation done by Erin McGee, a physical therapist, that concluded that she had exertional limitations of less than sedentary.[10] As the ALJ discusses in his decision, however, that evaluator questioned the reliability of the test results, and the ALJ discussed how objective medical test findings cast further doubts as to Sims's inability to perform sedentary work.[11]

Sims also challenges as inadequate the mental limitations in the RFC finding. The state agency reviewing psychologist, Robyn Hoffman, Ph.D., whose opinion the ALJ gave significant weight,[12] concluded that Sims was capable of simple and routine tasks in a static

---

[8] *Id.* at 619, 704 (April and July of 2010, within a year of her right knee replacement on June 29, 2009).

[9] *Id.* at 15.

[10] *Id.* at 757-64.

[11] *Id.* at 16.

[12] *Id.* at 18.

environment without strict time or production quotas.[13] The Sixth Circuit in *Ealy v. Commissioner of Social Security*,[14] and the cases of this Court applying *Ealy*,[15] have said that when a moderate limitation in attention, persistence, concentration, and pace is coupled with limitations regarding stress and production, the RFC must reflect those latter limitations.[16] The RFC adopted by the ALJ here did not.

The Commissioner argues that the ALJ did question the VE about adding such limitations to the RFC, and the VE replied that it would cut the available jobs in two of the occupations identified in half nationally and regionally. The Commissioner argues that because the national numbers are still significant, any error in complying with *Ealy* is harmless. Sims responds that the regional numbers become suspect at one-half, and the ALJ should have made a finding at step five with the limitations on time and production included.

The applicable statute and regulations define "jobs which exist in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country."[17] A commonsense reading of this

---

[13] *Id.* at 742.

[14] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

[15] *See*, *e.g.*, *Howlett v. Comm'r of Soc. Sec.*, No. 5:11 CV 902, 2012 WL 4506007, at *6 (N.D. Ohio Sept. 28, 2012).

[16] *Id.*

[17] 42 U.S.C. § 423 (2006). Federal regulations clarify the purpose of this requirement: "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 C.F.R. § 414.966.

provisions requires *either* work numbers from Sims's region *or* numbers from several other regions. Given that the burden of proof lies with the Commissioner to prove that such jobs exist in significant numbers,[18] the Commissioner ought to provide adequate regional numbers to show that existing jobs are not concentrated in only a few areas.

In this case, however, I must reluctantly follow the lead of the Sixth Circuit precedent and rely on the national numbers absent an "indication of gross concentration in a few areas."[19] There is no such indication here, so the national numbers will suffice.

Finally, as to the remand, there is no question that the critical physician's opinion post-dated the ALJ's decision and, therefore, qualifies as new evidence. The issue is whether that evidence is material – whether on remand that evidence would cause the ALJ to reconsider his no disability opinion.

---

[18] *Harmon v. Comm'r of Soc. Sec.*, 168 F.3d 289, 291 (6th Cir. 1999) ("Plaintiff has the burden to establish an entitlement to benefits by proving the existence of a disability as defined in the Act. A claimant establishes a prima facie case by showing that she is unable to perform her former work. The burden then shifts to the Secretary to show that claimant, considering her age, education, and work experience, can perform other work existing in significant numbers in the national economy." (citations omitted)).

[19] *See*, *Harmon*, 168 F.3d at 292 (holding that "700,000 jobs [in the national economy], with no indication of gross concentration in a few areas, is a 'significant number of jobs in the national economy'"); *see also*, *Geiger v. Apfel*, 229 F.3d 1151 (table), 2000 WL 1257184, at *2 (6th Cir. 2000) ("The Commissioner need not show that a significant number of jobs exists in the local economy, only that the claimant is capable of performing other jobs existing in the national economy."); *Nation v. Apfel*, 194 F.3d 1313 (table), 1999 WL 970302, at *8 (6th Cir. 1999) ("Based upon *Harmon*, it is clear that Plaintiff's claim that the vocational expert improperly failed to specify the geographical area of the state or direct Plaintiff to any specific job is without merit. It is sufficient that the vocational expert identified a significant number of jobs which exist in the national economy that Plaintiff could perform.").

The opinion at issue is that of Dorothy Bradford, M.D., dated April 18, 2012.[20] There she makes the following statement regarding the impairment of the right knee: "[O]*ne month ago* she developed pain in the right knee which was replaced years ago and is being treated for tendonitis with immobilization and physical therapy for six weeks. She is dependant on a walker to stand as she is non-weight bearing on the right knee." Although Sims argues to the contrary, this clearly shows an aggravation or deterioration of the pre-existing knee condition rather than evidence of the degree of impairment when the ALJ rendered his decision. This evidence, therefore, would not be material requiring a remand.[21]

## Conclusion

Substantial evidence supports the finding of the Commissioner that Sims had no disability. Accordingly, the decision of the Commissioner denying Sims disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: March 27, 2013  s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[20] ECF # 20-5 at 4 (emphasis added).

[21] *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).